UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Gwendolyn Dianette Walker, as Personal Representative of the Estate of Robert Lee Walker, <br><br> Plaintiff, <br><br> v. <br><br> Liberty Mutual Insurance Company and K and W Cafeterias, Inc., <br><br> Defendants. | Civil Action No.: 4:16-cv-01388-RBH <br><br><br><br><br> **ORDER** |

In this declaratory judgment action, Plaintiff asks this federal Court to determine whether Defendants can assert a lien under North Carolina workers' compensation law against settlement proceeds that Plaintiff received primarily from underinsured motorist coverage. Meanwhile, there is a related, ongoing state workers' compensation proceeding in North Carolina dealing with the same issues presented in this federal case.

The parties have filed cross-motions for summary judgment, but for the reasons explained herein, the Court will exercise its discretion and abstain from hearing this declaratory action. Accordingly, the Court will deny the summary judgment motions as moot and dismiss this action without prejudice.[1]

**Background**

On May 16, 2012, Plaintiff's husband died in an automobile accident in Dillon, South Carolina during the course of his employment with his North Carolina employer, Defendant K & W Cafeterias,

---

[1] Pursuant to Local Civil Rule 7.08 (D.S.C.), the Court does not find a hearing is necessary on the summary judgment motions.

Inc. ("K & W"), and while operating a vehicle[2] owned by K & W.  *See* Complaint & Answers [ECF Nos. 1-1, 5, & 6]. Plaintiff sought workers' compensation benefits from K & W and its insurance carrier, Defendant Liberty Mutual Insurance Company ("Liberty Mutual"), and she applied for death benefits under the North Carolina Workers' Compensation Act.[3]  *See* ECF No. 33-3 at p. 4. On December 12, 2012, the North Carolina Industrial Commission ("Industrial Commission" or "NCIC") issued a Consent Opinion and Award granting Plaintiff **$333,763** in benefits (to be disbursed in weekly payments of $650.89).  *See* ECF No. 35-6. Notably, this Consent Opinion and Award contained the **stipulations** of Plaintiff and Defendants K & W/Liberty Mutual that:

- Plaintiff's husband "died as the result of a motor vehicle accident arising out of and in the course of his employment with" K & W;
- "At all relevant times, the parties . . . were subject to and bound by the provisions of the North Carolina Workers' Compensation Act"; and
- "The North Carolina Industrial Commission has jurisdiction over the parties and the subject matter involved in this case."

*Id.* at pp. 1–2. Under North Carolina workers' compensation law, Defendants retained the ability to assert a subrogation lien on settlement proceeds obtained by Plaintiff from the at-fault third-party. *See* N.C. Gen. Stat. § 97–10.2(f).

In 2014, Plaintiff filed a wrongful death and survival action against the at-fault driver in South Carolina state court, and in March 2016, she settled the lawsuit and received the following proceeds:

---

[2] The parties agree that the vehicle had been assigned to Plaintiff's husband for his use and convenience while traveling for business purposes, was registered and bore a South Carolina license tag, was maintained and garaged in South Carolina, and was insured under a policy purchased by the employer that included underinsurance coverage. *See* ECF Nos. 1-1, 5, 6, & 33-2.

[3] N.C. Gen. Stat. §§ 97–1, *et seq. See generally Travelers Ins. Co. v. Noble Oil Servs., Inc.*, 42 F.3d 1386, 1994 WL 684031, at *1 (4th Cir. 1994) (unpublished table decision) ("As a general rule, the North Carolina Workers' Compensation Act provides the exclusive remedy for injuries suffered by employees in the course of their employment; North Carolina courts are without jurisdiction to hear employee injury claims, which instead must be heard by the North Carolina Industrial Commission[.]").

2

- **$50,000 in liability benefits** from the at-fault driver's insurer;
- **$12,500 in personal underinsured motorist ("UIM") coverage** (covering Plaintiff and her husband's own personal vehicle) from Plaintiff's own automobile insurance carrier; and
- **$900,00 in commercial UIM coverage** (covering the vehicle that Plaintiff's husband was driving when the accident occurred) from K & W's automobile insurance carrier.[4]

ECF Nos. 35-8 through 35-13. Defendants sought to enforce their $333,763 subrogation lien against Plaintiff's $962,500 settlement proceeds.[5] Thus, **on March 21, 2016,** Defendants filed a claim with the Industrial Commission seeking an order requiring Plaintiff to reimburse them for the workers' compensation benefits she had received. *See* ECF No. 35-14. That case is captioned "*ROBERT LEE WALKER, Deceased Employee-Plaintiff and GWENDOLYN DIANETTE WALKER, as Widow, and as Personal Representative of the ESTATE OF ROBERT LEE WALKER, Plaintiffs, v. K&W CAFETERIAS, Employer, and LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants*." ECF No. 44-1 at p. 1; *see also* ECF No. 33-3 at p. 1.

**On March 30, 2016**, Plaintiff filed the instant action in South Carolina state court (the Horry County Court of Common Pleas) against Defendants seeking solely declaratory relief. *See* ECF No. 1-1. In her complaint, Plaintiff alleges S.C. Code Ann. § 38–77–160[6] precludes subrogation and assignment of the settlement proceeds paid under the UIM coverage, and she seeks a declaration as to whether Defendants are entitled to assert a claim against any and all settlement proceeds, including the UIM settlement proceeds. *Id.*

---

[4] Plaintiff also received $25,000 in property damage proceeds from the at-fault driver's insurer, but those proceeds are not at issue because Defendants are not seeking to enforce their lien against them. *See* ECF No. 35 at p. 4.

[5] Plaintiff's counsel are holding the $962,500 in their trust account. *See* ECF No. 44-1 at p. 3.

[6] Section 38-77-160 of the South Carolina Code provides that UIM "[b]enefits paid pursuant to this section are not subject to subrogation and assignment." S.C. Code Ann. § 38-77-160 (2015).

3

On May 2, 2016, Defendants removed the action to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[7] On March 16, 2017, the Court issued an order denying Plaintiff's motion for judgment on the pleadings and motion for interpleader and Defendants' three motions to stay or continue. *See* ECF Nos. 10, 16, 19, 20, 25, & 29. In April 2017, the parties filed cross-motions for summary judgment. *See* ECF Nos. 33 & 35.

On July 10, 2017, a Deputy Commissioner of the Industrial Commission issued an Opinion and Award ruling in Defendants' favor and requiring Plaintiff to apply the $962,500 to satisfy Defendants' $333,763 lien. *See* ECF No. 44-1. On July 20, 2017, Plaintiff appealed the Deputy Commissioner's decision to the Full Commission of the Industrial Commission. *See* ECF No. 46-1. That appeal remains pending in North Carolina.

On August 16, 2017, the parties filed a Joint Motion to Defer the Current Trial Deadlines wherein they agreed the Deputy Commissioner's decision "addresses all issues currently before this Court, including whether S.C. [Code] Ann. § 38–77–160 precludes Liberty Mutual from receiving the 'underinsurance' settlement proceeds that Plaintiff has received; whether the NCIC has jurisdiction over this matter; and whether this Court should defer to the NCIC's adjudication." ECF No. 47. The Court granted the joint motion to continue, *see* ECF No. 48, and the cross-motions for summary judgment remain pending.

## **Discussion**

In their cross-motions for summary judgment, the parties dispute whether S.C. Code Ann. § 38–77–160 precludes Defendants from asserting their lien against Plaintiff's settlement proceeds,

---

[7] Plaintiff is a citizen of South Carolina, K & W is a North Carolina corporation with its principal place of business in Winston-Salem, North Carolina, and Liberty Mutual is a Massachusetts corporation with its principal place of business in Boston, Massachusetts. *See* ECF No. 1 at ¶¶ 5–7.

including those received from UIM coverage. However, Defendants separately argue the Court should decline to exercise its discretionary jurisdiction over this declaratory judgment action,[8] and the Court agrees abstention is appropriate.

I. **Legal Standard:[9] Declaratory Judgment Actions & *Brillhart/Wilton* Abstention**

"The Supreme Court held in *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942) and reaffirmed in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) that when a plaintiff brings a declaratory judgment action,[10] the district court enjoys discretion in deciding whether to assert jurisdiction over the action or abstain from hearing it." *Riley v. Dozier Internet Law, PC*, 371 F. App'x 399, 401 (4th Cir. 2010).[11] "[T]he *Brillhart/Wilton* standard . . . recognize[s] that courts have broad discretion to abstain from deciding declaratory judgment actions when concurrent state court proceedings are under way. This wide latitude arises out of 'federal courts['] unique and substantial discretion in deciding whether to declare the rights of litigants.'" *VonRosenberg v. Lawrence*, 781 F.3d 731, 734 (4th Cir. 2015) (emphasis removed) (third alteration in original) (quoting *Wilton*, 515 U.S. at 286). "The Supreme Court has repeatedly characterized the Declaratory Judgment Act as an enabling Act, which

---

[8] Plaintiff presents several arguments against abstention, *see* ECF No. 37 at pp. 3–4, and the Court addresses each argument throughout its discussion below.

[9] No discussion of the summary judgment standard is necessary because the Court is abstaining from hearing this action and is not ruling on the merits. *See, e.g.*, *Catalina London Ltd. v. Narruhn*, No. 4:11-cv-01661-RBH, 2012 WL 530112, at *2 n.2 (D.S.C. Feb. 17, 2012) ("Because this Court declines to hear this declaratory judgment action, it is unnecessary to discuss the legal standards governing summary judgment or motions for judgment on the pleadings.").

[10] The Fourth Circuit "treat[s] a state court declaratory action that is removed as invoking the Federal Declaratory Judgment Act, 28 U.S.C. § 2201." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013).

[11] This discretionary standard stems from the keyword "may" in the federal Declaratory Judgment Act. *Riley*, 371 F. App'x at 401; *see* 28 U.S.C. § 2201(a) (providing that a district court "***may*** declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)).

confers a discretion on the courts rather than an absolute right upon the litigant." *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (internal quotation marks omitted). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. Thus, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* at 282. "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.* at 288.

Generally, "a declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (internal quotation marks and ellipsis omitted). However, "[w]hen a related state court proceeding is pending, . . . considerations of federalism, efficiency, and comity should inform the district court's decision whether to exercise jurisdiction over a declaratory judgment action." *Coffey*, 368 F.3d at 412 (internal quotation marks omitted). In light of these considerations, the Fourth Circuit has articulated four factors—commonly known as the *Nautilus* factors—that a district court should consider in deciding whether to hear a declaratory judgment action when a related state court proceeding exists:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether

6

> the federal action is mere "procedural fencing," in the sense that the
> action is merely the product of forum-shopping.

*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir. 2005) (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493–94 (4th Cir. 1998), and citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994)). The *Nautilus* factors are not a "mechanical checklist," and a district court "should apply them flexibly in light of the particular circumstances of each case." *VRCompliance LLC v. HomeAway, Inc.*, 715 F.3d 570, 573 (4th Cir. 2013).

## II.  Analysis

Because there is a related state court proceeding pending before the North Carolina Industrial Commission, the Court will apply the *Nautilus* factors in determining whether abstention is appropriate.[12]

### A.  Whether North Carolina Has a Strong Interest in Having the Issues Decided in Its Courts

---

[12] Plaintiff appears to argue the pending case before the Industrial Commission cannot be considered a related state court proceeding, as she asserts "[t]he NCIC is not a North Carolina State Court . . . in the strict sense of that term" but "is primarily an administrative agency of the State." ECF No. 37 at 4 (citation omitted). However, other federal district courts have treated the North Carolina Industrial Commission as a "court" for purposes of the *Brillhart/Wilton* abstention standard. *See, e.g.*, *Weeks Marine, Inc. v. Pohler*, 2010 WL 4320484 (E.D.N.C. Oct. 20, 2010); *Safety Nat. Cas. Ins. Corp. v. City of Burlington*, 2006 WL 399675 (M.D.N.C. Feb. 17, 2006). *See also Bey v. North Carolina*, 2010 WL 4117393 (E.D.N.C. Oct. 18, 2010) (recognizing "decisions of the North Carolina Industrial Commission qualify as judicial actions as opposed to administrative or ministerial processes"), *aff'd*, 411 F. App'x 643 (4th Cir. 2011). Analogously, the Fourth Circuit and another judge within this district have treated the South Carolina Workers' Compensation Commission as a "court" for purposes of abstention in declaratory actions. *See, e.g.*, *Maryland Cas. Co. v. Boyle Const. Co.*, 123 F.2d 558 (4th Cir. 1941); *Owners Ins. Co., v. Warren Mech., LLC*, No. 2:16-CV-0669-DCN, 2018 WL 368709 (D.S.C. Jan. 11, 2018). Thus, the ongoing case before the North Carolina Industrial Commission qualifies as a related state court proceeding for purposes of applying the *Nautilus* factors.
  Additionally, the Court notes that although the case before the Industrial Commission is in North Carolina and the instant federal action is in the District of South Carolina, the *Brillhart/Wilton* abstention standard and the *Nautilus* factors still apply. *See, e.g.*, *New Wellington*, 416 F.3d 290 (affirming the district court's decision to abstain under *Brillhart/Wilton* where the federal declaratory action was in the U.S. District Court for the Western District of Virginia and the related state court action was in New Jersey).

A "[s]tate certainly has a strong interest in protecting its jurisprudence and an interest in deciding cases calling for application of its own law[.]" *Coffey*, 368 F.3d at 414. Here, Plaintiff calls upon this federal Court to decide complex and sophisticated issues of North Carolina workers' compensation law and its relationship to South Carolina insurance law. Specifically, the merits of this case turn on whether a subrogation lien arising purely by operation of the North Carolina Workers' Compensation Act can be asserted against settlement proceeds received primarily from UIM policies—plainly stated, this case pits the North Carolina subrogation statute against the South Carolina UIM statute. *Compare* N.C. Gen. Stat. § 97–10.2(f), *with* S.C. Code Ann. § 38–77–160.

"[T]he interplay between underinsured motorist awards and workers' compensation liens is an area of evolving state law, which has been the subject of recent legislation and considerable attention in the state courts" of North Carolina. *Safety Nat. Cas. Ins. Corp. v. City of Burlington*, 2006 WL 399675, at *6 (M.D.N.C. Feb. 17, 2006) (collecting cases); *see also Anglin v. Dunbar Armored, Inc.*, 742 S.E.2d 205 (N.C. App. 2013) (addressing the relationship between N.C. Gen. Stat. § 97–10.2 and S.C. Code Ann. § 38–77–160); *Cook v. Lowe's Home Centers, Inc.*, 704 S.E.2d 567 (N.C. App. 2011) (addressing the relationship between N.C. Gen. Stat. § 97–10.2 and Tennessee law). Comity favors allowing the *North Carolina* Industrial Commission to determine whether *North Carolina* workers' compensation law permits a *North Carolina* employer and its insurance carrier to enforce a *North Carolina* subrogation lien against UIM settlement proceeds that happened to be received in South Carolina, but are available under the North Carolina employer's UIM policy.

Moreover, the particular factual and procedural history of this case favor having the North Carolina courts/Industrial Commission decide the issues. As indicated above, Plaintiff applied for benefits under the North Carolina Workers' Compensation Act, thereby ***invoking*** the jurisdiction of the

8

North Carolina Industrial Commission. She even ***stipulated*** that her husband "died as the result of a motor vehicle accident arising out of and in the course of his employment with" K & W; that "[a]t all relevant times" she "w[as] subject to and bound by the provisions of the North Carolina Workers' Compensation Act"; and that "[t]he North Carolina Industrial Commission has jurisdiction over the parties and the subject matter involved in this case." ECF No. 35-6 at pp. 1–2. North Carolina law is clear that the Industrial

> Commission has the power to administer the Workers' Compensation Act and to hear "all questions arising under the Article if not settled by agreements of the parties interested therein, with the approval of the Commission . . . ." N.C. Gen. Stat. § 97–91 (2011). **The *exclusive venue* for a claim by an employee against an employer for injuries arising in the course of employment is the Commission** when the employer has "complied with provisions of the [Workers' Compensation Act]." N.C. Gen. Stat. § 97–10.1 (2011). In order to invoke such jurisdiction, an employee must either file a claim for compensation or submit a voluntary settlement for approval. **Once jurisdiction is *invoked*, the Commission retains *continuing jurisdiction* of all proceedings begun before it.**

*Allred v. Exceptional Landscapes, Inc.*, 743 S.E.2d 48, 51–52 (N.C. App. 2013) (some internal citations omitted) (emphases added); *see also Pearson v. C.P. Buckner Steel Erection Co.*, 498 S.E.2d 818, 820 (N.C. 1998) ("[T]he General Assembly intended the Commission to have continuing jurisdiction of proceedings begun before it.").

Moreover, the North Carolina Workers' Compensation Act contains a mechanism whereby employers such as K & W and insurance carriers such as Liberty Mutual can seek enforcement of their subrogation lien against a claimant's third-party settlement proceeds. *See* N.C. Gen. Stat.

9

§ 97–10.2(f);[13] *Murray v. Moody*, 797 S.E.2d 365, 367 (N.C. Ct. App. 2017) ("Pursuant to the North Carolina Workers' Compensation Act, an employer and its workers' compensation carrier are entitled to a lien on an injured employee's recovery in an action against a third-party tortfeasor. This lien extends **to all benefits** paid to an employee for injuries caused by the third party." (emphasis added)). The fact that the Industrial Commission has exclusive and continuing jurisdiction over all workers' compensation claims underscores North Carolina's interest in hearing the issues, especially when a claimant such as Plaintiff appears to have submitted and stipulated to that jurisdiction before she even filed the instant case. *See, e.g.*, *Maryland Cas. Co. v. Boyle Const. Co.*, 123 F.2d 558, 565–66 (4th Cir. 1941) (affirming a district court's refusal to render a declaratory judgment that "would have settled . . . an issue with respect to workmen's compensation liability, which under the statutes of South Carolina was triable before the state Industrial Commission"); *Safety National*, 2006 WL 399675, at *6 (abstaining in part because "previous proceedings regarding [a party's workers' compensation] benefits have occurred before the Industrial Commission, and the Industrial Commission has continuing jurisdiction as to at least some of the issues raised in this case").

In sum, Plaintiff seeks a South Carolina federal court to rule on the appropriateness of a North Carolina workers' compensation potential subrogation lien on settlement proceeds received from a North Carolina employer's UIM policy ($900k) and a smaller personal UIM policy ($12.5k) and consider S.C. Code Ann. § 38–77–160.[14] North Carolina's interest in resolving the issues outweighs

---

[13] Section 97–10.2(f)(1) provides: "If the employer has filed a written admission of liability for benefits under this Chapter with, or if an award final in nature in favor of the employee has been entered by the Industrial Commission, then any amount obtained by any person by settlement with, judgment against, or otherwise from the third party by reason of such injury or death shall be disbursed by order of the Industrial Commission . . . ."

[14] The Deputy Commissioner ruled that "Plaintiff's $900,000.00 in commercial UIM proceeds were paid pursuant to a North Carolina liability policy. While the policy contains a South Carolina endorsement (as well as endorsements or financial responsibility identification cards for Florida, West Virginia, and Virginia), the UIM policy

10

that of this federal Court. The first *Nautilus* factor strongly supports abstention.

## B. Whether the North Carolina Courts Can Resolve the Issues More Efficiently Than This Federal Court

"As a general rule, 'the first suit should have priority, absent the showing of balance of convenience in favor of the second action.'" *Riley*, 371 F. App'x at 403 (quoting *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)). Here, Defendants filed their subrogation claim with the Industrial Commission *before* Plaintiff filed the instant declaratory judgment action (which was subsequently removed to this Court). The state proceeding is also further along than this federal action, with the Deputy Commissioner having already rendered an opinion and an appeal having been filed with the Full Commission. Any appeal of the Industrial Commission's ultimate decision would be to the North Carolina Court of Appeals, and if necessary, to the North Carolina Supreme Court—not this Court. *See* N.C. Gen. Stat. § 97–86; *see, e.g.*, *Easter-Rozzelle v. City of Charlotte*, 807 S.E.2d 122, 123–27 (N.C. 2017) (summarizing the appellate steps of a workers' compensation case).

Also, as detailed below, the same factual and legal issues are at stake in this federal action and the pending state proceeding. Thus, Plaintiff can resolve all issues she wants this federal Court to hear in the North Carolina courts. *See, e.g.*, *Poston*, 88 F.3d at 258 ("The state litigation . . . could resolve

---

was 'made' in North Carolina, was paid pursuant to the provisions of a North Carolina policy, and is subject to the laws of this State." ECF No. 44-1 at p. 10.

In contrast, Plaintiff argues that "regardless of Defendants' contention that the insurance contract having been entered into in North Carolina, the law of South Carolina is that the situs of the insured property prescribes the application of South Carolina law. Moreover, the policy itself provides that it must be construed to conform to South Carolina law. Section 5 of the Endorsement for South Carolina Underinsurance Motorist Coverage provides as follows: [']This Endorsement is intended to be in ***full*** conformity with the South Carolina Insurance Laws. If any provision of this endorsement conflicts with that law, it is changed to comply with the law.['] Defendant K & W has chosen through the underinsurance policy language covering its vehicles located in South Carolina, the law of South Carolina as the governing law, which includes the aforementioned statutory law." ECF No. 33-1 at p. 7 (quoting ECF No. 33-4 at p. 3).

11

all issues, and . . . [c]oncern for efficiency and judicial economy clearly support the district court's decision [to abstain]."); *Riley*, 371 F. App'x at 403 ("This court's interference with the pending state court proceeding would therefore produce inefficiencies by needlessly duplicating efforts, generating piecemeal litigation, and expending limited judicial resources."). Finally, as previously mentioned, this case involves application of complex matters of North Carolina workers' compensation law—matters appropriately left to the North Carolina courts that ordinarily handle them.[15] The second *Nautilus* factor weighs in favor of abstention.

### C. Whether Overlapping Factual and Legal Issues Might Create Unnecessary Entanglement between North Carolina Courts and This Federal Court

"Entanglement is all the more likely where, as here, common issues 'are already being litigated by the same parties in the related state court action.'" *Riley*, 371 F. App'x at 403 (quoting *Nautilus*, 15 F.3d at 379). "In such cases, there is a real risk that the state court's prior resolution of overlapping issues would entitle those issues to preclusive effect . . . ." *Id.* The parties in this federal case—Plaintiff, Liberty Mutual, and K & W—are all parties in the North Carolina proceeding.[16]

---

[15] Plaintiff argues "a decision by the NCIC will not result in a final resolution of this matter" because "Defendants will still have to bring suit in South Carolina in order to attach the proceeds being held in South Carolina since the NCIC does not have jurisdiction over property in another state." ECF No. 37 at p. 4. In support of this argument, Plaintiff cites *Pennoyer v. Neff*, 95 U.S. 714 (1877), wherein the Supreme Court discussed proceedings *in rem* versus those *in personam*. *See id.*; ECF No. 39 at p. 2. However, even if the Court exercised jurisdiction over this declaratory action, it would only be able to issue a declaration of legal rights—the Court would not have *in rem* jurisdiction over the $962,500 proceeds. *See generally R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 957–59 (4th Cir. 1999) (recognizing declaratory actions are *in personam* actions; and explaining the difference between *in personam* actions and *in rem* actions); *Trueman Fertilizer Co. v. Larson*, 196 F.2d 910, 911 & n.1 (5th Cir. 1952) (holding a declaratory "action is not in rem, but is in personam"). Thus, Plaintiff's argument does not affect the Court's decision that the Industrial Commission can more efficiently resolve the issues.

[16] Plaintiff argues she "brought the workers' compensation claim in her individual capacity only" and "none of th[e] heirs" of her husband's estate were parties to that claim. ECF No. 37 at p. 3. While it is true Plaintiff applied for death benefits as a widow and received them as such, *see* ECF No. 36-6, the **current lien proceeding** before the Industrial Commission names her as both widow and personal representative of the estate. *See* ECF No. 44-1 at p. 1 (case captioned "*ROBERT LEE WALKER, Deceased Employee-Plaintiff and GWENDOLYN DIANETTE WALKER, as Widow, **and as Personal Representative of the ESTATE OF ROBERT LEE WALKER**, Plaintiffs, v. K&W*

Moreover, the parties have filed a joint motion in this federal case wherein they ***agree*** the Deputy Commissioner's opinion "**addresses *all* issues currently before this Court**." ECF No. 47 at p. 2 (emphasis added). A comparison of the Deputy Commissioner's decision with the record in this case confirms the factual and legal issues are inextricably intertwined. *See, e.g.*, *Safety National*, 2006 WL 399675, at *7 (finding unnecessary entanglement "where the [c]ourt's exercise of jurisdiction is discretionary and where North Carolina state courts would potentially view the lien claims as within the exclusive jurisdiction of the Industrial Commission").

The Court is mindful that "a declaratory judgment action . . . should not be used . . . to interfere with an action which has already been instituted." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). The Court also has serious concerns about the preclusive effect of the existing decision of the Deputy Commissioner. Issuing a declaratory judgment would require the Court to adjudicate the same issues already decided and being appealed in North Carolina. An intervening declaration by this Court as to the rights and legal relations of the parties could interfere with the Industrial Commission's (and potentially the North Carolina appellate courts') decision regarding the same. Hearing this case would clearly create unnecessary entanglement between the North Carolina courts and this federal Court, and therefore the third *Nautilus* factor heavily supports abstention.

### D. Whether This Federal Action Constitutes Procedural Fencing

The final *Nautilus* factor requires consideration of "whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for

---

*CAFETERIAS, Employer, and LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants*" (bold emphasis added)). Likewise, in this federal action, Plaintiff is representing the estate. *See* ECF No. 1-1 (complaint captioned "*Gwendolyn Dianette Walker,* **as Personal Representative of the Estate of Robert Lee Walker**, *Plaintiff, vs. Liberty Mutual Insurance Company and K and W Cafeterias Inc., Defendants*" (bold emphasis added)). Thus, Plaintiff is both a party to the current proceeding before the Industrial Commission and to the instant federal action.

res judicata or to achiev[e] a federal hearing in a case otherwise not removable." *Aetna*, 139 F.3d 419, 422 (alteration in original) (internal quotation marks omitted). The Fourth Circuit has specified procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006); *see also Nexsen Pruet, LLC v. Westport Ins. Corp.*, No. 3:10-cv-00895-JFA, 2010 WL 3169378, at *4 (D.S.C. Aug. 5, 2010) (observing "the procedural fencing the Fourth Circuit appears concerned with . . . relate[s] to manipulation of ***forum*** in the state-versus-federal context" (emphasis added)).

This declaratory action was not filed in federal court by Plaintiff but instead was removed here by Defendants, and therefore Plaintiff cannot be deemed to have forum-shopped for a federal hearing or to have "raced to federal court" to file her declaratory action.[17] *See, e.g.*, *McClung v. Westport Ins. Corp.*, 2012 WL 2906760, at *4 (S.D.W. Va. July 16, 2012) ("The final [*Nautilus*] factor is also not implicated here. The declaratory judgment action is not being used as a mere procedural device to access the federal forum because the plaintiff did not originally file its declaratory judgment action in federal court."); *Lark v. Nationwide Ins. Co. of Am.*, 2013 WL 5918310, at *4 (W.D. Va. Oct. 31, 2013) ("[T]here is no persuasive evidence that this declaratory judgment action is being used as mere 'procedural fencing.' . . . The plaintiffs—masters of their complaints—brought these properly removable declaratory judgment actions in state court, and [the] defendant . . . simply exercised its right to remove the actions to federal court."); *Porter v. Buck*, 2014 WL 3563415, at *5 (W.D. Va. July 18, 2014) (same). Thus, the final *Nautilus* factor is neutral.

---

[17] Plaintiff correctly points out she originally filed this case in South Carolina circuit court, *see* ECF No. 37 at p. 3, and thereby invoked the South Carolina Uniform Declaratory Judgments Act, S.C. Code Ann. §§ 15–53–10 to –140.

### E. Summary

The first, second, and third *Nautilus* factors confirm that federalism, efficiency, and comity caution against hearing this case. A declaratory judgment would neither clarify nor settle the legal relations at issue, and would not eliminate or provide relief from the uncertainty, insecurity, and controversy giving rise to this federal proceeding. Accordingly, the Court will abstain from exercising jurisdiction over this declaratory action, and will dismiss it without prejudice to the parties pursuing their claims before the Industrial Commission and the North Carolina appellate courts.[18] *See generally*

---

[18] This Order does not constitute a ruling on the merits of the issues and should not be construed or relied upon as such. **However, the Court notes the Deputy Commissioner's decision contains an erroneous interpretation of South Carolina law.** On page 12 of her decision, the Deputy Commissioner states the following: "Even if SC law did apply, S.C. Code § 42–1–560 (South Carolina statute's counterpart to N.C.G.S. § 10.2) would be the governing provision rather than S.C. Code § 38–77–160 (a statute regulating automobile liability insurance carriers). . . . S.C. Code § 42–1–560 contains no prohibition against the subrogation of UIM proceeds." ECF No. 44-1 at p. 12. This statement is to some extent incorrect. While § 38–77–160 does not reference workers' compensation, it **still** has been interpreted as prohibiting subrogation of UIM proceeds in the workers' compensation lien context, as discussed below.

The South Carolina Supreme Court has specified that "South Carolina Code Ann. § 42–1–560 **is a subrogation statute**." *Breeden v. TCW, Inc./Tennessee Exp.*, 584 S.E.2d 379, 382 (S.C. 2003) (emphasis added). Significantly, S.C. Code § 38–77–160 states, "Benefits paid pursuant to this section **are not subject to subrogation** and assignment." S.C. Code Ann. § 38-77-160 (2015) (emphasis added). Thus, South Carolina law is unambiguously clear that workers' compensation carriers cannot subrogate against UIM proceeds. Accordingly, if South Carolina law applied, Defendants would ***not*** be able to subrogate against UIM proceeds received by Plaintiff (under either K & W's UIM coverage or Plaintiff's personal UIM coverage)—contrary to the Deputy Commissioner's holding.

The Court suggests the parties read the following case for further guidance: *Staley v. Intermodal Cargo Servs.*, **2010 WL 1541598** (S.C. Work. Comp. Comm. Mar. 30, 2010). In *Staley*, the Appellate Panel of the South Carolina Workers' Compensation Commission dealt with a similar issue involving S.C. Code §§ 38–77–160 and 42–1–560 and explained: "[S]ince **underinsured benefits are first party benefits**, and the [S.C. Workers' Compensation] Act grants the Defendants a lien on **third party benefits** only, then they are not entitled to enforce their lien against any underinsured benefits. Other jurisdictions which have considered this question have almost unanimously held workers' compensation liens do not attach to the proceeds of UM or UIM proceeds **because they are first party benefits**." 2010 WL 1541598, at *4 (emphases added) (collecting cases). North Carolina appears to be a jurisdiction that does not follow this rule based on the decisions of *Anglin v. Dunbar Armored, Inc.*, 742 S.E.2d 205 (N.C. App. 2013), and *Cook v. Lowe's Home Centers, Inc.*, 704 S.E.2d 567 (N.C. App. 2011)—both of which are discussed in the Deputy Commissioner's decision. *See* ECF No. 44-1 at pp. 11–12. It also appears that workers' compensation benefits could have been filed under either North Carolina or South Carolina law. *See generally Oxendine v. Davis*, 646 S.E.2d 143, 145 (S.C. 2007) ("An employee covered by the provisions of the South Carolina Workers' Compensation Act is authorized to file his claim under the laws of the state where he is hired, ***the state where he is injured***, or the state where his employment is located." (emphasis added) (citing S.C. Code Ann. § 42–15–10)).

Of course, the Court is aware that the Deputy Commissioner's discussion of S.C. Code § 42–1–560 was simply an alternative ruling and not the primary basis for her decision, as she determined that the North Carolina

*Wilton*, 515 U.S. at 288 ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before . . . dismissing the action."); *see, e.g.*, *Poston*, 88 F.3d 255 (affirming the district court's dismissal without prejudice of a declaratory action based on *Brillhart/Wilton* abstention); *Catalina London Ltd. v. Narruhn*, No. 4:11-cv-01661-RBH, 2012 WL 530112 (D.S.C. Feb. 17, 2012) (abstaining under the *Brillhart/Wilton* standard and dismissing a declaratory action without prejudice).

### **Conclusion**

For the foregoing reasons, the Court **ABSTAINS** from hearing this declaratory judgment action, **DENIES AS MOOT** the parties' cross-motions for summary judgment [ECF Nos. 33 & 35], and **DISMISSES** this case *without prejudice*.

**IT IS SO ORDERED.**

Florence, South Carolina  
January 26, 2018

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge

---

Workers' Compensation Act governed (not the South Carolina Workers' Compensation Act). *See* ECF No. 44-1 at p. 11. Nevertheless, the Court points out the erroneous discussion of S.C. Code §§ 38–77–160 and 42–1–560 for the parties' mutual benefit and in the interest of justice.